USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/21/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
WILLIAM OCHOA, :
:
Plaintiff, :  16-CV-8729 (JMF)
:
-v- :  MEMORANDUM OPINION
:  AND ORDER
FEDERAL EXPRESS CORPORATION, :
:
Defendant. :
:
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

    Plaintiff William Ochoa, proceeding *pro se*, alleges that his former employer, Federal Express Corporation ("FedEx"), discriminated against him on the basis of his race and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* (Docket No. 2 ("Compl.")). FedEx now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. For the reasons that follow, its motion is granted.

## BACKGROUND

    The relevant facts, taken from the Complaint and admissible materials submitted in connection with the pending motion, are either undisputed or described in the light most favorable to Ochoa. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

    Ochoa, who hails from Peru and is of Hispanic descent, began working for FedEx on April 23, 2004, and was employed as a part-time courier delivering packages in Manhattan's Financial District. (Docket No. 37 ("Ochoa Decl."), ¶¶ 3-4; Compl. 2, 4). Until March 12, 2016,

Ochoa was never "subject to any disciplinary issues" or "accused of being aggressive with colleagues . . . or with other drivers on the road." (Ochoa Decl. ¶¶ 5-6). On that date, however, Ochoa was waiting at a stop light when the driver of a New York City Taxi and Limousine Commission ("TLC") vehicle began insulting and harassing him, telling him that "FedEx drivers do not know how to drive." (*Id.* ¶ 6; *see* Compl. 4). The TLC driver then followed Ochoa to his next delivery stop, at which time Ochoa began walking from his van to deliver his packages at a commercial building, "which also happened to be in the direction of where the TLC driver was stopped." (Ochoa Decl. ¶ 7). The TLC driver began yelling at Ochoa again and, in response, Ochoa asked the driver to get out of his car "in the hopes that [they] could have a conversation and [Ochoa] could understand what was happening and why [the driver] was so angry." (*Id.*). When the driver got out of his car and "got into a fighting stance," Ochoa took out his cell phone to record a video of the TLC vehicle. (*Id.* ¶¶ 7-8). Next, Ochoa left to deliver his packages, and upon his return, the TLC driver was gone. (*Id.* ¶ 8).

When Ochoa returned to his FedEx base, he reported the incident to his manager, Nakeisha Williams. (*Id.* ¶¶ 8-9; Compl. 4). Later that day, Williams informed Ochoa that the TLC driver had called the station "claiming that [Ochoa] walked to his vehicle in an aggressive manner and asked him to exit his vehicle." (Compl. 4; *see also* Ochoa Decl. ¶ 10). Williams also asked Ochoa to write a statement describing the event. (Ochoa Decl. ¶ 10). On Ochoa's next scheduled workday, March 15, 2016, Ochoa met with Ricky Singleton, a security specialist, who advised him that he would be suspended pending an investigation. (*Id.* ¶¶ 11-12). Singleton took Ochoa's recording of the incident, and informed Ochoa that the TLC driver had promised to provide FedEx with his own video. (*Id.* ¶ 14). Three days later, operations manager Mark Branch advised Ochoa that he was being terminated for aggressive behavior. (*Id.* ¶¶ 15-

2

16). Branch told Ochoa that the decision "was out of his hands" as FedEx's Chief Executive Officer had watched the TLC driver's video himself and mandated that Ochoa be terminated. (*Id.*¶ 16).

Ochoa pursued an internal appeal of his termination, but felt that he did not receive a fair hearing in multiple respects. (*Id.* ¶¶ 19, 21). Ochoa tried to defend himself by bringing up the case of Stephen Curry, a non-Hispanic FedEx courier, who — Ochoa believes — "had experienced a very similar incident . . . and had been allowed to keep his employment" after a suspension. (*Id.* ¶ 21; *see also id.* ¶¶ 22-24). Nevertheless, FedEx upheld Ochoa's termination at step one of the appeals process. (*Id.* ¶ 25). Ochoa pursued the next step, which was supposed to involve a written statement and a telephone call with an Eastern Region Senior Supervisor. (*Id.*). The telephone call never took place, however; instead, Ochoa received a letter upholding the step one decision. (*Id.*). Thereafter, he filed for the third step of the appeals process. (*Id.*). But shortly after calling a human resources representative to check in on his case, he received notice that his appeal had once again failed. (*Id.*). After Ochoa filed an employment discrimination claim with the Equal Employment Opportunity Commission, this suit followed. (*Id.* ¶¶ 26-29).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a

3

genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, the non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

Finally, it is well established that courts must give "special solicitude" to *pro se* litigants in connection with motions for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d

Cir. 2010). Thus, a *pro se* party's papers opposing summary judgment are to be read liberally and interpreted to "raise the strongest arguments that they suggest." *See, e.g.*, *Clinton v. Oppenheimer & Co.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011). This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his or her "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation mark omitted). Nor is the "duty to liberally construe a plaintiff's [opposition] . . . the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61 (internal quotation marks omitted)).

## DISCUSSION

As noted, Ochoa claims that FedEx discriminated against him because of his race and national origin. Such claims are evaluated using the three-step *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)) (applying the *McDonnell Douglas* framework to claims under Title VII and the NYSHRL); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) ("[A] plaintiff's discrimination claims under both the NYSHRL and the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII."). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. For purposes of Title VII and the NYSHRL, that requires a showing that: (1) he is a member of a protected group; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discrimination. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d

93, 107 (2d Cir. 2010).[1]  If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action.  If it does so, then the plaintiff can no longer rely on his *prima facie* case, but may still prevail if he can show that the employer's action was in fact the result of discrimination.  *See id.* at 106.

Ochoa fails to satisfy his burden at the first stage of the inquiry, as he cannot establish that his termination occurred under circumstances giving rise to an inference of discrimination.  His principal, if not only, argument to the contrary rests on what he alleges was the more favorable treatment afforded to Curry.  (Docket No. 38 ("Pl.'s Mem."), at 4-6).  Admittedly, "[a] showing of disparate treatment — that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group — is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. County of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted).  But there are two fatal flaws with respect to Ochoa's arguments concerning Curry.  First, to demonstrate disparate treatment, a plaintiff must show that he was "*similarly situated in all material respects* to the individuals with whom [h]e seeks to compare h[im]self." *Id.* (emphasis added) (internal quotation marks omitted).  Ochoa and Curry, however, differed in at least one significant respect: FedEx did not consider any videos of the incident in reviewing Curry's encounter.  (Ochoa Decl. ¶ 24).  Second, and more fundamentally, there is zero admissible evidence in the record concerning Curry's circumstances.  Indeed, Ochoa's argument rests solely on his own declaration and testimony about Curry.  (*See id.* ¶¶ 22-24; Docket No. 39-2 ("Ochoa Depo."), at 68).  But his account is rank hearsay, as he admits that his "recollection of

---

[1] As discussed below, the NYCHRL standards are more liberal than the Title VII and NYSHRL standards.  *See Loeffler v. State Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)

Mr. Curry's events" is "based exclusively on what Mr. Curry told" him. (*Id.*). Accordingly, it is inadmissible and, thus, no basis to avoid summary judgment.

Without admissible evidence of disparate treatment, there is no evidence in the record whatsoever suggesting that Ochoa was discriminated against on the basis of race or national origin. He admits, for example, that he was never the target of "any racist comments . . . about [his] Hispanic race . . . [or] national origin." (Docket No. 30-3, at 148). In fact, he concedes that he never heard any employee at FedEx — let alone any of the employees involved in his termination — use a racial slur or belittle anyone of Peruvian descent. (*See id.* at 148-49, 151-52). He does cast various conclusory and unsupported aspersions on the process leading to his termination, suggesting, for example, that his manager falsely claimed that the decision to fire him came directly from FedEx's Chief Executive Officer; that "other employees in similar positions . . . agreed with Mr. Ochoa that his actions were not a violation of the company's policies"; and that FedEx did not engage in a "thorough and careful review" of the incident in various ways. (Pl.'s Mem. 7-11). But to the extent that those aspersions are based on admissible evidence at all, they suffer from one fundamental problem: Even if they are valid, they do not support a conclusion that FedEx discriminated against Ochoa *on the basis of* race or national origin. *See, e.g.*, *White v. N.Y.C. Dep't of Educ.*, No. 05-CV-2064 (RRM) (LB), 2008 WL 4507614, at *5 (E.D.N.Y. Sept. 30, 2008) ("Title VII is not a civility statute. Title VII solely addresses conduct motivated (a) by animus towards members of protected class and (b) because of the victim's protected characteristics; it does not reach instances of generally poor behavior, personal animosity or even unfair treatment." (citation omitted)).

In short, Ochoa has not established a *prima facie* case of discrimination under Title VII or NYSHRL because there is no evidence that his termination occurred under circumstances giving

7

rise to an inference of discrimination.  In any event, and in the alternative, Ochoa's claim would fail at the third stage of the *McDonnell Douglas* analysis for largely the same reasons.  That is, FedEx has undeniably put forward a legitimate, non-discriminatory reason for Ochoa's termination: namely, his violation of the company's Acceptable Conduct policy, "which prohibits employees from behaving in an aggressive, threatening or intimidating behavior while on duty."  (Docket No. 31, at 5; *see also* Docket No. 30-4, at 27; Docket No. 30-5, at 45, 52-53). Under *McDonell Douglas,* the burden would thus shift back to Ochoa, who would have to show — without the presumption of discrimination generated by the *prima facie* case — that FedEx's proffered reason is not only pretext, but pretext *for discrimination. See, e.g.*, *See, e.g Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000) (noting that a plaintiff must "adduce admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proferred reason is pretext for an impermissible motivation" and that "the plaintiff is not entitled to judgment unless she shows that the challenged employment decision was more likely than not motivated, in whole or in part, by unlawful discrimination").  In light of the evidence discussed above — or, more to the point, the *lack* of evidence discussed above — no reasonable jury could find that Ochoa has done so.

That leaves Ochoa's NYCHRL claim.  Strictly speaking, that claim must be analyzed "separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks and citation omitted).  At the same time, a plaintiff claiming violation of the NYCHRL must also point to facts giving rise to an inference that he suffered unequal treatment "because of" his protected characteristics.  *See, e.g.*, *Johnson*

*v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70-71 (2d Cir. 2016) (summary order). Even under the more liberal NYCHRL standards, therefore, Ochoa's claim fails "because he has not shown that any of the complained-of conduct was the result of discrimination on the basis of" race or national origin. *Macias v. Barrier Free Living, Inc.*, No. 16-CV-1735 (ER), 2018 WL 1603566, at *8 (S.D.N.Y. Mar. 28, 2018); *see also Mihalik*, 715 F.3d at 110 ("[D]istrict courts must be mindful that the NYCHRL is not a general civility code. The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive. It is not enough that a plaintiff has an overbearing or obnoxious boss. She must show that she has been treated less well at least in part *because of* her gender." (internal citations and quotations omitted)).

## CONCLUSION

For the reasons stated above, FedEx's motion for summary judgment is GRANTED, and Ochoa's claims are dismissed in their entirety. Further, this Court certifies pursuant to Title 28, United States Code, Section 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See, e.g.*, *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate Docket No. 29, to close the case, and to send a copy of this Memorandum Opinion and Order to Ochoa.

SO ORDERED.

Date: August 20, 2018
New York, New York

JESSE M. FURMAN
United States District Judge